UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ALEIA MILANO,<br><br>Plaintiff,<br><br>v.<br><br>MISSOURI BAPTIST UNIVERSITY and EDGAR MENDEZ,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:25-CV-1654-ZMB |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants Missouri Baptist University (MBU) and Edgar Mendez's Motions to Dismiss. Docs. 14, 17. Because Plaintiff Aleia Milano states only a viable Title VII retaliation claim against MBU, the Court dismisses her remaining claims.

**BACKGROUND**

**I. Factual Background**[1]

Mendez is the former head coach of the MBU women's basketball team. Doc. 5 ¶ 4. In July 2024, he hired Milano to serve as an assistant coach. *Id.* ¶¶ 2, 11–12. The two agreed to an annual salary of $10,000 for the coaching position, with the opportunity for additional hourly work assisting the MBU Athletics Director. *Id.* ¶ 12. Mendez also promised her a pay raise to $20,000 for the 2025–26 school year. *Id.* Additionally, MBU would allow Milano to complete her master's degree at no cost and send her on a recruiting trip to Spain. *Id.*

Shortly after starting at MBU, Milano learned that the side job with the Athletics Director was no longer available. *Id.* ¶ 24. Moreover, Milano alleges that Mendez subjected her to repeated sexual harassment and a hostile work environment. *Id.* ¶ 25. For instance, Mendez routinely

[1] The Court accepts as true the following well-pled facts for the purpose of this motion. *See infra* at 3–4.

commented on the physical appearance of Milano and the basketball players, *id.* ¶¶ 28–29; stated that he "know[s] what young women need" and "knows how to make [young girls] cry," *id.* ¶ 32; and invited Milano to spend the night with him and his wife if she "ever want[ed] to feel the presence of a real family," *id.* Further, Mendez met individually with the players he deemed attractive and would cut playing time for those who refused him. *Id.* ¶ 33. Nor was his conduct limited to verbal harassment. Mendez often hugged Milano and squeezed her shoulders while at work, *id.* ¶¶ 30, 36, and on one occasion, he touched and sniffed Milano's hair without permission, *id.* ¶ 31.

Milano also alleges two incidents in which Mendez "hint[ed] at . . . becoming sexually involved." *Id.* ¶¶ 26, 35. Shortly after she moved to St. Louis, Mendez invited Milano to attend church with him. *Id.* ¶ 26. Afterwards, he gave her a tour of his house and commented that Milano could "always stay the night." *Id.* Milano then sat on a large couch, and Mendez sat uncomfortably close to her with his legs spread while he and his wife asked her personal questions. *Id.* A few months later, Mendez informed Milano that he had booked a single hotel room for them to share on a recruiting trip. *Id.* ¶ 35. At practice the next day, Milano confronted Mendez over the shared hotel room and also told him to stop touching her and making inappropriate comments. *Id.* ¶ 37. After this conversation, Mendez began micromanaging Milano, rescinded her pay increase, and cancelled her promised recruiting trip to Spain. *Id.* ¶ 43. And a few months later, Mendez suspended Milano for five days, with MBU ultimately extending the suspension for four months after she complained about Mendez's sexual harassment. *Id.* ¶¶ 44–45, 59.

Specifically, in December 2024, Milano met with MBU's Director of Human Resources and complained about Mendez's behavior, which prompted an investigation. *Id.* ¶¶ 48–49. During her fourth probe into the status of the investigation, Milano indicated that Mendez may have sexually harassed players as well. *Id.* ¶¶ 34, 52. Indeed, multiple players on the team complained

to MBU about Mendez, but the University never addressed his inappropriate behavior. *Id.* ¶¶ 38–42. MBU completed its inquiry into Milano's complaint in January 2025 and found her allegation of harassment "unsubstantiated." *Id.* ¶ 53. Milano promptly appealed that decision, but it was affirmed for lack of evidence in March 2025. *Id.* ¶¶ 54, 58. However, Mendez left MBU shortly thereafter, and Milano was reinstated the day after his departure. *Id.* ¶¶ 59–64.

## II. Procedural Background

Milano initially brought this action in state court. *Id.* As to MBU, she asserted ten claims for: (1) sexual harassment under Title VII of the Civil Rights Act of 1964; (2) Title VII retaliation; (3) sexual harassment under Title IX of the Education Amendments of 1972, (4) Title IX retaliation; (5) Missouri Human Rights Act (MHRA) sexual harassment; (6) MHRA retaliation; (7) MHRA sex discrimination in public accommodation; (8) negligent hiring; (9) negligent retention; and (10) negligent supervision. *Id.* ¶¶ 69–157. She also brought common-law claims against Mendez for assault and battery. *Id.* ¶¶ 158–59. In response, MBU and Mendez jointly removed the case to this Court. Doc. 1 ¶¶ 1–4. Defendants subsequently filed separate motions to dismiss, Docs. 14, 17, which are fully briefed and ripe for adjudication, Docs. 21–22, 25–26.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss for "failure to state a claim upon which relief can be granted." The purpose of such motions "is to test the legal sufficiency of the complaint." *Ford v. R.J. Reynolds Tobacco Co.*, 553 F. Supp. 3d 693, 697 (E.D. Mo. 2021). To survive a Rule 12(b)(6) motion, the complaint must include "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief" and providing notice of the grounds on which the claim rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting FED. R. CIV. P. 8(a)(2)). Additionally, the complaint must include sufficient detail to make a claim "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

Although "[s]pecific facts are not necessary," the plaintiff must include "either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Delker v. MasterCard Int'l*, 21 F.4th 1019, 1024 (8th Cir. 2022) (quotations omitted). The question is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. *Id.*

At the motion-to-dismiss stage, the Court must accept as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Brokken v. Hennepin Cnty.*, 140 F.4th 445, 450 (8th Cir. 2025) (citation omitted). However, the Court does not "presume the truth of legal conclusions." *Jones v. City of St. Louis*, 104 F.4th 1043, 1046 (8th Cir. 2024) (citation omitted); *see also Kulkay v. Roy*, 847 F.3d 637, 641 (8th Cir. 2017) ("[T]he court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations."). Ultimately, this analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Braden v. Wal-Mart Stores*, 588 F.3d 585, 594 (8th Cir. 2009).

**DISCUSSION**

Milano has failed to state a claim for the majority of the counts in her Petition. While she has adequately pled a Title VII retaliation claim against MBU, her sexual harassment allegations fall short of the Eighth Circuit's demanding standard. Likewise, her individual Title IX claims fail on the face of the Petition because she has not connected her injury to educational benefits, nor has she alleged relevant protected activity on behalf of student athletes. Milano also concedes that her MHRA claims are barred by statute, and the remainder of her state-law claims against MBU and Mendez are barred by the MHRA's exclusivity provision.

## I. Title VII Claims

First, the Court addresses Milano's Title VII claims. MBU insists that these counts are barred by the ministerial exception. Doc. 17 at 7–10. But the Petition itself does not establish that affirmative defense, and at this stage, the Court may consider only a limited set of facts that preclude the application of the exception. Alternatively, MBU argues that Milano fails to plead sexual-harassment and retaliation claims. Doc. 17 at 10–16. While the Court agrees regarding harassment, Milano's retaliation claim survives dismissal.

### *a. Ministerial Exception*

At least at this stage, the Court cannot conclude that Milano's Title VII claims are barred by the ministerial exception. That doctrine, flowing from the First Amendment, excepts religious organizations like MBU from certain employment-discrimination claims related to matters of church governance. *See Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 188–89 (2012); *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 747 (2020). MBU contends that Milano's role, while not explicitly religious, nonetheless required her to "lead[] students with a 'Biblically based Christian based perspective.'" Doc. 17 at 10. Milano argues that she does not fall under the ministerial exception because her duties were primarily secular. Doc. 21 at 6–7. Moreover, she asserts it would be improper to resolve that question on the limited factual record before the Court. *Id.* at 9–10. She is correct, at least as to the latter point.

There is no rigid formula for determining whether an employee falls within the ministerial exception. *Our Lady of Guadalupe*, 591 U.S. at 737. But the Supreme Court has emphasized that the inquiry cannot be reduced to an employee's title. *Id.* at 753. Instead, the Court must examine "what an employee does" to assess whether she performs "vital religious duties." *Id.* at 753–54. While courts should address this issue as early as possible "to avoid excessive entanglement in

church matters," *see Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648, 654 & n.1 (10th Cir. 2002), the ministerial exception "operates as an affirmative defense to employment discrimination claims," *Demkovich v. St. Andrew the Apostle Par.*, 3 F.4th 968, 977 (7th Cir. 2021) (en banc) (citation omitted). In other words, at this stage, the Court is "limited to the four corners of [the] complaint." *Nare v. Omaha Discovery Tr.*, 179 F.4th 628, 632 (8th Cir. 2026).

Here, the Petition does not describe Milano's coaching duties in any detail and is silent as to any religious responsibilities she may have had. And while the Court could consider documents outside the pleadings by converting MBU's motion to one for summary judgment, *see Conseant v. St. Louis Univ. High Sch.*, No. 4:23-CV-1113-CDP, 2024 WL 1701540, at *2 (E.D. Mo. Apr. 19, 2024), doing so here would not help MBU because its proffered mission statement does not indicate that all University employees perform vital religious duties, *see* Doc. 17 at 10. Particularly given the fact-intensive nature of this inquiry, the Court finds it inappropriate to decide the question on the limited record before it.[2] *See Schmidt v. Univ. of Nw.-St. Paul*, 2024 WL 477166, at *4–5 (D. Minn. Feb. 7, 2024) (taking this approach under similar circumstances). As such, the Court proceeds to consider the viability of Milano's Title VII claims.

### *b. Hostile Work Environment Claim for Sexual Harassment*

Even accepting the facts in the Petition as true, Milano has failed to state a claim of sexual harassment under Title VII. MBU argues that Milano did not establish that her work environment was sufficiently dominated by harassment to survive dismissal. Doc. 17 at 12. Milano counters that, taken together, the allegations sufficiently support her claim. Doc. 21 at 11. But the Eighth Circuit has found more egregious conduct insufficient to meet Title VII's pleading standard.

[2] That said, at the upcoming Rule 16 conference that will be set by separate order, the parties should be prepared to discuss whether phased discovery and early summary-judgment briefing is warranted. *See Markel v. Union of Orthodox Jewish Congregations*, 124 F.4th 796, 809 n.5 (9th Cir. 2024) (distinguishing between "discovery to determine who is a minister" and "discovery to determine how that minister was treated") (quoting *Demkovich*, 3 F.4th at 983).

"A hostile work environment . . . exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Martinez-Medina v. Rollins*, 144 F.4th 1091, 1097 (8th Cir. 2025) (quotation omitted). To establish such a claim, an employee must show that: "(1) she is a member of the class of people protected by Title VII, (2) she was subject to unwelcome harassment, (3) the harassment resulted from her membership in the protected class, and (4) the harassment was severe enough to affect the terms, conditions, or privileges of her employment." *Id.* To survive a motion to dismiss, the plaintiff must identify "[m]ore than a few isolated incidents," and any "alleged harassment must be so intimidating, offensive, or hostile that it poisoned the work environment." *Blomker v. Jewell*, 831 F.3d 1051, 1057 (8th Cir. 2016) (quotations omitted). Additionally, the Eighth Circuit has instructed that trial courts must apply "demanding harassment standards to *filter out complaints* attacking the ordinary tribulations of the workplace." *Id.* (citation omitted). MBU disputes only whether the conduct was severe and pervasive enough to constitute actionable sexual harassment. *See* Doc. 17 at 11–12.

Here, Milano alleges that Mendez: (1) commented on her appearance and that of basketball players; (2) gave Milano a tour of his house that included bedrooms and his shower; (3) invited Milano to spend the night at his house; (4) repeatedly hugged her and touched her shoulders; (5) touched and sniffed her hair on one occasion; and (6) booked a hotel room for them to share on a recruiting trip that apparently never occurred. Doc. 5 ¶¶ 25–35. While this behavior is certainly inappropriate, the Eighth Circuit has found similar conduct insufficient to state a claim. *See Warmington v. Univ. of Minn.*, 998 F.3d 789, 799 (8th Cir. 2021) (failure to state a claim when coaches "made gender-based and sexual comments about female athletes," allowed male athletes to change in front of the women's team, and told employee that she "looked beautiful"); *Lopez v. Whirlpool Corp.*, 989

F.3d 656, 663 (8th Cir. 2021) (no severe or pervasive sexual harassment where defendant "touched [plaintiff] almost every time he saw her" over the course of months, ogled her, and called her "baby"); *Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 933–35 (8th Cir. 2002) (no severe or pervasive sexual harassment despite multiple improper touches, proposition for a relationship, and request to sketch a sexually explicit drawing); *see also Blomker*, 831 F.3d at 1058–59 (collecting cases). Thus, the conduct at issue here—while reprehensive—falls short of the Eighth Circuit's demanding standard. *See Lopez*, 989 F.3d at 663 ("Even as we condemn that conduct, we cannot view it as meeting the exacting standard that we must apply in deciding [defendant's] liability").

Moreover, the cases Milano cites are either distinguishable or unpersuasive. For example, in *Rorie v. United Parcel Service*, the Eighth Circuit described more egregious conduct by a supervisor—including "pat[ting] a female employee on the back, brush[ing] up against her, tell[ing] her she smells good," "constantly coming on to her," and talking about a coworker's penis size—as "borderline." 151 F.3d 757, 762 (8th Cir. 1998). Likewise, the Eighth Circuit has recognized that evidence of chronic innuendo and unwanted physical conduct can be sufficient to support a hostile work environment claim. *Howard v. Burns Bros., Inc.*, 149 F.3d 835, 840–41 (8th Cir. 1998). But that decision was in the context of reviewing a jury's verdict and involved an employee who touched multiple coworkers' buttocks, "talk[ed] nasty," made constant sexual innuendos and jokes that involved lewd gestures, and called a colleague a "fucking bitch." *Id.* at 838–39. And Milano simply has not pled the constant, overtly sexual touching or conversation that characterizes these decisions. Accordingly, the Court finds that Milano has failed to state a claim for a hostile working environment based on sexual harassment under Title VII.

### *c. Retaliation Claim*

Nevertheless, Milano's Title VII retaliation claim survives dismissal. MBU argues that Milano has failed to assert a cognizable retaliation claim because it was unreasonable for her to believe that Mendez's conduct was unlawful and because she faced no adverse employment action as a result of her complaints. Doc. 17 at 13–16. Milano responds by highlighting several adverse employment consequences and rests on her underlying claims to demonstrate her objectively reasonable belief that she faced discrimination. Doc. 21 at 15. MBU's arguments fail on both fronts. Milano has alleged opposition to what she reasonably believed was a Title VII violation, and at least as pled, the harms that followed amounted to an adverse employment action.

To establish a prima facie case of retaliation under Title VII, a plaintiff must show "(1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) a causal connection exists between the two." *Wilson v. Ark. Dep't of Hum. Servs.*, 850 F.3d 368, 372 (8th Cir. 2017). For the first element, protected conduct includes "opposition to employment practices prohibited under Title VII." *Snyder v. Arconic, Corp.*, 2024 WL 3813173, at *3 (8th Cir. Aug. 14, 2024). However, the opposed conduct need not *actually* qualify as unlawful, as long as the plaintiff had an "objectively reasonable belief" that the practice violates Title VII. *See EEOC v. N. Mem'l Health Care*, 908 F.3d 1098, 1103 (8th Cir. 2018); *see also Pye v. Nu Aire*, 641 F.3d 1011, 1018–23 (8th Cir. 2011) (holding that a retaliation claim survived summary judgment despite lack of cognizable discrimination because "the employee acted in a good faith, objectively reasonable belief that the practices were unlawful"). Reasonableness is assessed "in light of the applicable substantive law." *Gibson v. Concrete Equip. Co.*, 960 F.3d 1057, 1065 (8th Cir. 2020) (citation omitted). As for the second element, the Supreme Court recently clarified that an adverse action need not be "significant, material, or serious." *Cole v. Grp. Health Plan*, 105 F.4th 1110, 1114 (8th Cir. 2024) (citing *Muldrow v. City of St. Louis*, 601 U.S. 346, 356 n.2 (2024)). Rather,

a plaintiff need only "plead some harm respecting an identifiable term or condition of employment." *Id*. And "[t]he element may also be met by the 'cumulative effect' of an employer's alleged retaliatory conduct, if the acts, considered in the aggregate, would dissuade a reasonable employee from reporting discrimination." *Quinn v. St. Louis Cnty.*, 653 F.3d 745, 751 (8th Cir. 2011) (citation omitted).

Here, MBU contests the first two elements. The school first asserts that Milano was so objectively unreasonable in believing that Mendez had committed sexual harassment that her complaints did not constitute a protected activity. Doc. 5 ¶ 44; Doc. 17 at 13–14. But the retaliation cases that MBU cites are inapposite, as they involve less serious conduct than that alleged here. *See* Doc. 17 at 13. For example, *Brannum* involved a single sexually explicit comment, 518 F.3d at 548–49, but Milano has alleged that Mendez consistently touched and massaged her shoulders, smelled her hair, and booked a hotel room for them to share on a recruiting trip. Though these actions fall short of sexual harassment under Title VII, a viable retaliation claim does not require underlying conduct that is actually unlawful. *N. Mem'l Health Care*, 908 F.3d at 1103. Thus, as pled, there is enough to establish protected conduct under Title VII.

MBU's second argument—that Milano suffered no adverse employment action—fares no better. Following Milano's complaints of sexual harassment, Mendez suspended her, rescinded a $10,000 raise, canceled a promised trip to Spain, and "micromanaged" and "berated" her. *See* Doc. 5 ¶¶ 43–44. MBU then extended the temporary suspension for four months, beyond the end of the basketball season. *See id.* ¶ 45. Taken "in the aggregate," *Quinn*, 656 F.3d at 751, these actions show "some harm" to Milano's employment, *see Cole*, 105 F.4th at 1114 (reversing dismissal where employer subjected employee to scorn and ridicule and reassigned her to a different work area); *see also Collins v. Union Pac. R.R. Co.*, 108 F.4th 1049, 1052 (8th Cir. 2024) (reversing grant of summary judgment where employer "screamed at [plaintiff] several times, prevented her

from attending a discretionary safety training course, increased [her] workload, and reworked a position-specific vacation system under which [she] would have had preferential treatment").

MBU argues that Milano suffered no adverse action because she was compensated throughout her suspension. Doc. 17 at 14–15; Doc. 26 at 8. Even assuming that is true, *but see* Doc. 21 at 15 n.3, MBU's cases are distinguishable. While precedent indicates that administrative leave with pay is not necessarily an adverse action, those cases are limited to situations in which employers put employees on leave for non-retaliatory reasons, such as protecting the employee or supporting an active investigation. *See, e.g.*, *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 891–92 (8th Cir. 2005) (paid leave "pending an investigation"); *Moisant v. Air Midwest, Inc.*, 291 F.3d 1028, 1031–32 (8th Cir. 2002) ("suspension with pay" for employee to "recover from the sexual assault"). Here, Milano's suspension began before and extended beyond the formal investigation, Doc. 5 ¶¶ 44–45, so it could not have been for the same benign reasons in those cases. Moreover, MBU's cases predate the Eighth Circuit's adoption of the *Muldrow* standard in the retaliation context. *See Cole*, 108 F.4th at 1053 ("the Supreme Court recently obviated the requirement—replete in [Eighth Circuit] case law—that the adverse employment action be significant, material, or serious." (citation omitted)). Under this reduced standard, the question is only whether Milano pled "some harm respecting an identifiable term or condition of employment." *Pujji v. Buttigieg*, No. 4:21-CV-445-SEP, 2025 WL 328094, at *11 (E.D. Mo. Jan. 29, 2025) (citation omitted). Here, that harm includes a series of actions related to Milano's employment, the "cumulative effect" of which is sufficiently adverse. *See id.* (quoting *Wagner v. Campbell*, 779 F.3d 761, 767 (8th Cir. 2015)). Particularly considering that "adverse employment action is a fact issue that is rarely appropriate for Rule 12 resolution," *see Patrick v. Henderson*, 255 F.3d 914, 916 (8th Cir. 2001), Milano has pled enough for her retaliation claim to survive dismissal.

## II. Title IX Claims

Milano also brings parallel harassment and retaliation claims under Title IX, asserting that MBU's conduct deprived her of "access to educational opportunities and benefits." Doc. 5 ¶¶ 98, 105–08. Among other things, MBU argues that Milano fails to assert a cognizable Title IX claim because the injuries she alleges relate to her employment rather than her education. Doc. 17 at 19–20. Milano counters that her status as a student-employee implicates Title IX. Doc. 21 at 16–20. But her Petition fails to connect the purported discrimination to the denial of any educational benefits. Accordingly, she has failed to state a claim under Title IX.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The Eighth Circuit has recognized that the standards for sex-discrimination claims under Title VII and Title IX are identical. *Powell v. Doane Univ.*, 2023 WL 6445830, at *12 (D. Neb. Oct. 3, 2023) (citing *Brine v. Univ. of Iowa*, 90 F.3d 271, 276 (8th Cir. 1996)). And for a Title IX retaliation claim, at a minimum, a plaintiff must allege that: "(1) the plaintiff partook in protected activity; (2) the plaintiff suffered an adverse action; and (3) a causal connection exists between the two." *Du Bois v. Bd. of Regents of Univ. of Minn.*, 987 F.3d 1199, 1203–04 (8th Cir. 2021) (noting circuit split on whether defendant must know of protected activity without taking a position).

Milano insists she is entitled to proceed with her Title IX claims because she was both employed as an assistant coach and enrolled as a graduate student. Doc. 5 ¶ 2. Her status is admittedly unique. The parties do not identify, nor has the Court been able to locate, any controlling authority addressing the pleading requirements for someone with mixed status like Milano. Yet, while she is undisputedly a student, the injuries she asserts relate to her employment.

*See* Doc. 5 ¶¶ 7, 12, 24, 45, 54. And her Petition lacks any logical bridge between those injuries and her opportunities as a graduate student. *See, e.g.*, *Shank v. Carleton Coll.*, 993 F.3d 567, 573 (8th Cir. 2021) ("A Title IX plaintiff is also required to show the discrimination was so severe, pervasive, and objectively offensive that it can be said to deprive the victim of access to the educational opportunities or benefits provided by the school."). Instead, she asserts in her briefing that some privileges of her employment—like coaching experience and the international recruiting trip—were also "educational" opportunities. Doc. 21 at 18. But "it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss," *Morgan Distributing Co. v. Unidynamic Corp.*, 868 F.2d 992, 994 (8th Cir. 1989), and Milano asks for too much in suggesting that the Court should infer a connection that is not apparent on the face of her Petition. As such, her individual Title IX claims fail.

Nor can Milano bring a Title IX retaliation claim for complaining about Mendez's sexual harassment of other students. As MBU points out, the Petition does not allege that Milano ever filed complaints on behalf of her players. Doc. 17 at 18. The closest it comes is indicating that Milano "expressed concern" that members of the team "may have been" sexually harassed by Mendez. Doc. 5 ¶ 52. This vague statement is hardly the kind of advocacy required to "vindicate the rights of" student-athletes in the Title IX retaliation context. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 181 (2005). And even if it were, Milano's retaliation claim faces another barrier: timing. Indeed, the Petition's lone assertion regarding her reporting Mendez's harassment of other students came more than a month *after* her suspension began. Doc. 5 ¶ 52. Thus, Milano has not pled any adverse action as a result of her email regarding those students. Consequently, the Court dismisses Milano's Title IX claims.

## III. State-Law Claims

All that remains is a hodgepodge of state-law claims. As an initial matter, Milano concedes that her MHRA claims against MBU are barred as a matter of law. As such, those counts are dismissed with prejudice. But the parties disagree on the impact of MHRA preemption on Milano's common-law claims against MBU. Doc. 17 at 5–6; Doc. 21 at 3–4. Moreover, Mendez asserts that Milano's common-law claims against him are similarly barred under Missouri law. Doc. 15 at 3–5. The Court addresses Milano's claims against MBU and Mendez in turn.

### *a. Common-Law Claims Against MBU*

The final point of contention between Milano and MBU is whether the claims for negligent hiring, retention, and supervision are barred by the MHRA. Doc. 5 ¶¶ 143–57. MBU contends that the MHRA requires all civil claims related to employment to be filed under the MHRA "regardless of whether a cognizable claim under the MHRA exists." Doc. 17 at 6–7. Milano disagrees, asserting that MBU's exemption from the MHRA necessarily means that it can be sued for common-law violations. But Milano has it wrong. The plain language of the statute, as well as the structure of subsequent amendments, establishes that her common-law claims against MBU are barred.

The MHRA prohibits "employers" from "discriminat[ing] against any individual . . . because of such individual's . . . sex." MO. REV. STAT. § 213.055.1(1)(a). And it expressly excludes "religious or sectarian organizations" from the definition of "employer." *Id.* § 213.010(8). Significantly, the statute also contains an exclusivity provision providing that "[t]his chapter, in addition to [two related employment statutes], shall provide the exclusive remedy for any and all claims for injury or damages arising out of an employment relationship." *Id.* § 213.070.2. And Missouri courts have held that the MHRA "supersedes and displaces" common-law claims. *State ex rel. Church & Dwight Co. v. Collins*, 543 S.W.3d 22, 28 (Mo. banc 2018).

Milano starts by acknowledging that MBU is exempt from the MHRA. But she contends that, as a result, MBU is once again exposed to liability for common-law claims. Doc. 21 at 3–4. As her theory goes, because an "unlawful employment practice must be committed by an employer" and because MBU is no longer an "employer," there is no longer an "employment relationship" under the statute. *Id.* (quoting *State ex rel. Green v. Mo. Comm'n on Hum. Rts.*, 648 S.W.3d 31, 34 n.2 (Mo. Ct. App. 2022)). While clever, this interpretation misreads the statute.

Both the exclusivity provision and the religious-entity exception to the term "employer" were added as part of a set of 2017 amendments. *See generally* S*tate ex rel. Swoboda v. Mo. Comm'n on Hum. Rts.*, 651 S.W.3d 800, 812 (Mo. banc 2022). It would be strange for the General Assembly to have simultaneously channeled all workplace-related claims into a defined set of statutes, while at the same time resurrecting common-law liability for religious institutions by excluding them from the exclusivity provision—particularly without saying so. *Barker v. Mo. Dep't of Corr.*, 695 S.W.3d 181, 185 (Mo. Ct. App. 2024) ("When engaging in statutory interpretation, we are to presume a logical result, as opposed to an absurd or unreasonable one."). Indeed, the Western District rejected an argument nearly identical to Milano's on textual grounds, explaining that the applicability of the exclusivity provision turned on whether the "alleged injury or damages arise from an employment relationship" rather than whether the defendant qualified as an "employer." *Huskey v. Petsmart*, 2019 WL 122873, at *2 (W.D. Mo. Jan. 7, 2019). The Court agrees that is the relevant inquiry, and because the answer is yes, Milano's common-law claims against MBU are barred.

***b. Assault and Battery***

Last are Milano's assault and battery claims against Mendez. Doc. 5 ¶¶ 158–69. Like MBU, Mendez argues, in part, that Milano's claims are barred under the MHRA because her injuries "arise[] from the employment relationship." Doc. 14 ¶ 4. However, Mendez neither cites

case law nor expands on that point. *See* Doc. 25 at 5. Meanwhile, Milano resists that conclusion based on relevant precedent, arguing that the MHRA does not preempt intentional torts against co-employees. Doc. 22 at 4–10. But because Milano's common-law claims arise from the same factual allegations underlying her MHRA claims, they are preempted under binding precedent.

As noted above, the MHRA and two related statutes "provide the exclusive remedy for claims for injury or damages arising out of an employment relationship." *Malloy v. Trileaf Corp.*, No. 4:24-CV-506-CDP, 2024 WL 2320217, at *2 (E.D. Mo. May 22, 2024) (discussing the history of the exclusivity provision); *see also* MO. REV. STAT. § 213.070.2 (the exclusivity provision). "In other words, in Missouri, damages arising from the employment relationship cannot be redressed except through the specified statutes." *Huskey*, 2019 WL 122873, at *2. Significantly, the Eighth Circuit has held that the exclusivity provision preempts common-law claims against co-employees that arise under the same factual allegations as an MHRA claim. *See Johnson v. Midwest Div. - RBH*, 88 F.4th 731, 736 (8th Cir. 2023).

In resisting dismissal, Milano cites several district court cases that have rejected MHRA preemption for torts committed against co-employees. The problem is, the Eighth Circuit has abrogated these decisions.[3] In *Johnson*, the plaintiff asserted both MHRA claims against her employer and intentional torts against a fellow employee. *Id.* at 735–36. Because, like here, the claims against the co-workers were based on "the same factual allegations underlying the MHRA claims," the Eighth Circuit held that the torts were preempted by the MHRA. *Id.* Applying

[3] It also bears noting that most of these cases arose in the context of fraudulent-joinder claims and thus involved a more permissive standard of letting the claims proceed in state court. *See e.g.*, *T.F. v. BB St. Louis*, No. 4:20-CV-1526-RLW, 2021 WL 494795, at *6 (E.D. Mo. Feb. 10, 2021) (explaining that "where the issue of state-law is unsettled and questionable, the Eighth Circuit has instructed that the better practice is for the federal court not to decide the doubtful question . . . but simply to remand the case and leave the question for the state courts to decide"). Moreover, although *Malloy v. Trileaf Corp.* was subsequent *Johnson*, it is also distinguishable. *See* Doc. 22 at 9. In *Malloy*, the Court declined to follow *Johnson* because the plaintiff did not allege "any discriminatory conduct prohibited by the MHRA . . . or that any retaliation action was taken in response to her opposition to or complaints of such prohibited discrimination." 2024 WL 2320217, at *3. But Milano certainly did.

*Johnson*, this Court has since concluded there was no "reasonable basis for predicting that state law might impose liability" in a similar context because an employee "cannot assert common law claims against his manager based on th[e] same conduct . . . giving rise to an MHRA action." *Fowler v. DoorDash Essentials*, No. 4:25-CV-1097-HEA, 2025 WL 3492790, at *3 (E.D. Mo. Dec. 5, 2025).

Here, Milano pled sexual harassment, retaliation, and sex discrimination claims in violation of the MHRA and Title VII,[5] Doc. 5 at 17–21, 24–29, and the allegations underlying those claims are the predicate for her assault and battery claims against Mendez, *id.* at 32–33. As such, *Johnson* dictates that Milano's common-law claims are preempted, at least as currently pled. However, it is at least conceivable that Milano could identify tortious conduct that occurred outside of her employment relationship, distinct from her harassment and retaliation claims. *See McBride v. AgXplore*, 2021 WL 4819576, at *1 (applying MHRA preemption to defamation claims that overlapped with sexual harassment and retaliation during plaintiff's employment but not to a count asserting "post-employment defamation"). Therefore, the Court dismisses the assault and battery claims without prejudice and with leave to amend her Petition within 14 days.

## CONCLUSION

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant Missouri Baptist University's [17] Motion to Dismiss and **GRANTS** Defendant Edgar Mendez's [14] Motion to Dismiss. Specifically, the Court dismisses Counts I, III, IV, XI, and XII without

---

[5] Although the parties have not addressed the issue, it does not appear that the dismissal of Milano's MHRA claims would have any impact on this analysis, at least so long as the Title VII claims remain. Title VII protects against the same type of discrimination as the MHRA, and her surviving retaliation claim is based on the same underlying discriminatory conduct as the assault and battery claims. Indeed, Milano's own authority supports this conclusion. *See Malloy*, 2024 WL 2320217, at *3 (emphasizing that the plaintiff did not allege "any discriminatory conduct prohibited by the MHRA . . . that is, conduct based on her [sex] … or that any retaliatory action was taken in response to her opposition to . . . discrimination"). Similarly, this Court has concluded elsewhere that the MHRA preempted common-law claims even where the only discrimination and retaliation claims were brought under Title VII. *See McBride v. AgXplore Int'l*, No. 1:21-CV-41-SNLJ, 2021 WL 4819576, at *1 (E.D. Mo. Oct. 15, 2021).

prejudice and Counts V through X with prejudice (with only Count II remaining). The Clerk of Court is directed to terminate Mendez as a party in this case unless Milano files an amended complaint by October 13, 2026.

So ordered this 29th day of September 2026.

ZACHARY M. BLUESTONE
UNITED STATES DISTRICT JUDGE